2005 VT 46

## State of Vermont v. Ricky N. Wilkinson

[879 A.2d 445]

No. 03-363

Present: **Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.),**
**Specially Assigned**

Opinion Filed April 8, 2005
Motion for Reargument Denied June 1, 2005

*William D. Wright*, Bennington County State's Attorney, and *Brian K. Marthage*, Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Reiber, J.** Defendant appeals from a conviction of first-degree aggravated domestic assault. Defendant contends that the trial court violated his Sixth Amendment right to confront the victim, a convicted perjurer, and his due process rights by barring the victim's testimony at trial and by admitting into evidence an excited utterance the victim made after the assault. We affirm.

## I.

¶ 2. The State charged defendant with first-degree aggravated domestic assault for pointing a gun at and threatening to kill his stepson, Tom. See 13 V.S.A. § 1043(a)(2) (criminalizing the use or attempted use of a deadly weapon against a family or household member). The charge arose from events that took place at defendant's home while he was intoxicated. Defendant and his wife had an argument that escalated to the point where defendant threatened to kill the family dog. Someone present in the home at the time called the police, and defendant fled. The police arrived and eventually took defendant's wife to the police station so that she could give a statement. When the wife returned home, she saw Tom and a friend outside. The friend warned her that defendant had a gun. At some point, Tom and defendant's daughter went inside the home and found defendant with a gun, yelling, "[s]omebody's going to die today." Defendant pointed the gun at Tom. The police were summoned again and arrived shortly thereafter.

¶ 3. Before trial, the State informed the court that Tom had been convicted of perjury, and therefore he was incompetent to testify pursuant to 13 V.S.A. § 2907, which provides that "[t]he oath of a person convicted of perjury ... shall not be received in a proceeding in court." The State intended to introduce Tom's statements about the

events through defendant's cousin. Tom visited defendant's cousin after defendant threatened him. Tom apparently told the cousin that: (1) he was afraid; (2) defendant had pulled a gun on him; (3) he had never been so scared in his whole life; and (4) he thought defendant was going to kill him. Defendant's counsel objected to the State's proffer and argued that admitting Tom's hearsay statements would violate defendant's Sixth Amendment right to confront his accuser. The trial court concluded that § 2907 precluded Tom from testifying in court and deferred ruling on the admission of Tom's statements as the trial proceeded.

¶ 4. Ultimately, the trial court determined that Tom's statement to defendant's cousin was admissible as an excited utterance. The court concluded that an excited utterance falls within a firmly rooted hearsay exception, and therefore the admission of Tom's statement did not violate defendant's constitutional right to confront his accuser. At the conclusion of the evidence, the jury found defendant guilty of aggravated domestic assault, and the court sentenced him to a prison term of ten to fifteen years. Defendant appealed.

## II.

¶ 5. On appeal, defendant argues that admitting Tom's excited utterance violated his Sixth Amendment right to confront his accuser. Defendant also argues that the court should have excluded Tom's statement because convicted perjurers are barred by 13 V.S.A. § 2907 from testifying in court. Finally, defendant argues that he was deprived of his right to present a defense. We address each claim in turn.

¶ 6. The Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. After the trial court's decision in this case, the United States Supreme Court decided *Crawford v. Washington*, which held that "[w]here *testimonial* evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. 36, 68 (2004) (emphasis added). If a statement offered against a defendant is not testimonial, its admission does not violate the Confrontation Clause; rather, state evidentiary rules govern the admissibility of these statements. *Id.* The statement at issue in *Crawford* was a recorded statement that the defendant's wife made during a police interrogation. Defendant had no opportunity to cross-examine his wife during the interrogation. Due to the marital privilege, the wife could not testify against defendant and was therefore unavailable at

trial. The Supreme Court concluded that admitting the wife's recorded statement violated the Confrontation Clause because the statement — elicited by police interrogation — was testimonial and the defendant had no opportunity to cross-examine the wife. *Id.* at 68. Thus, defendant's Confrontation Clause claim here turns on whether Tom's statement to defendant's cousin was testimonial.

¶ 7. Defendant argues that Tom's statement was testimonial because by the time Tom made the statement the police were investigating the incident at defendant's house. Thus, defendant contends, Tom knew that the police would want to get a statement from him and that the prosecution would use what he said at trial. We conclude that Tom's statement to defendant's cousin was not testimonial and that no constitutional violation occurred by admitting the statement into evidence.

¶ 8. The *Crawford* Court explained that testimony is "typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Id.* at 51 (quoting 1 N. Webster, An American Dictionary of the English Language (1828)). The Court declined to define "testimonial" comprehensively, *id.* at 68, but it provided examples fitting the above definition: prior testimony at a preliminary hearing; pretrial statements that a declarant would reasonably expect to be used by the prosecution; "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51-52 (quotations and citations omitted). These practices, the Court explained, bear the "closest kinship to the abuses at which the Confrontation Clause was directed." *Id.* at 68. And, the Court recognized, "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* at 51.

¶ 9. Recent case law from other jurisdictions further defines what statements are "testimonial." In *United States v. Saget*, the Second Circuit Court of Appeals held that a statement made to a confidential informant, whose status was unknown to the declarant, was not testimonial under *Crawford*. 377 F.3d 223, 229 (2d Cir. 2004). The court reasoned that the statement was not made in the context of a formal interrogation or other structured environment, and the declarant had no knowledge that the informant was an agent of law enforcement officials. *Id.* at 228. Other examples of nontestimonial statements include a domestic assault victim's call to a 911 operator, *People v.*

*Moscat*, 777 N.Y.S.2d 875, 880 (Crim. Ct. 2004), and a child's excited utterance to her mother following a sexual assault, *In re Doe*, 103 P.3d 967, 972 (Idaho Ct. App. 2004). In contrast, a plea allocution is considered testimonial because the defendant is under oath and the statement is given formally in court and in response to questioning by the court or the prosecutor. *United States v. McClain*, 377 F.3d 219, 221 (2d Cir. 2004).

■ ¶ 10. In the present case, Tom's excited utterance to defendant's cousin shortly after defendant threatened to kill him was not testimonial. In contrast to the wife's statement in *Crawford*, the statement at issue in this case was not given to the police and did not occur during the course of the police investigation. The statement was made to an individual who had no relationship to the prosecution. Additionally, no police were present at the cousin's home, Tom was not under oath, his statement was not a product of the adversarial process, and no one was examining Tom for the purpose of collecting information. Tom's statement, like the nontestimonial statement in *Saget*, was not made in the context of a formal interrogation or other structured environment. Rather, as the trial court found, Tom was excitedly expressing his fear to a friend. We therefore conclude that Tom's hearsay statement to defendant's cousin was not testimonial and the Confrontation Clause did not bar its admission against defendant.

¶ 11. Defendant next argues that Tom's excited utterance, while admissible under V.R.E. 803(2) as a hearsay exception, is barred by 13 V.S.A. § 2907. Defendant contends that § 2907 prohibits the court from admitting Tom's excited utterance because Tom is a convicted perjurer and thus legally incompetent to testify in court. Defendant asserts that the Legislature did not intend to permit a convicted perjurer's statements, otherwise barred by § 2907, to come in under a hearsay exception.

■ ¶ 12. Section 2907 states: "The oath of a person convicted of perjury . . . shall not be received in a proceeding in court." The statute prevents a court from accepting a convicted perjurer's oath, and thereby excludes any sworn testimony by the perjurer — whether made in court or not. Under the facts here, Tom, a convicted perjurer, did not

make his statement under oath. Therefore, § 2907 does not bar the statement's admission.*

¶ 13. Our conclusion comports with the purposes behind § 2907 and the excited utterance hearsay exception. To qualify as an excited utterance under V.R.E. 803(2), the statement must "relat[e] to a startling event or condition," and be "made while the declarant was under the stress of excitement caused by the event or condition." Excited utterances are admissible because, by definition, the declarant had no time to fabricate her story at the time she made the statement, rendering the statement sufficiently reliable. Reporter's Notes, V.R.E. 803; *In re Estate of Peters*, 171 Vt. 381, 391, 765 A.2d 468, 476 (2000). Thus, the inherent trustworthiness of Tom's excited utterance made the statement admissible; the fact that he had previously perjured himself under oath is irrelevant.

¶ 14. Finally, defendant claims that the court denied him his Sixth Amendment right to present a defense. Defendant failed to raise this issue at trial and thus we review for plain error. V.R.Cr.P. 52(b). Plain error exists only in exceptional circumstances where a failure to recognize the error would result in a miscarriage of justice, or where the error is so grave and serious that it strikes at the very heart of the defendant's constitutional rights. *In re Carter*, 2004 VT 21, ¶ 21, 176 Vt. 322, 848 A.2d 281.

¶ 15. The Sixth Amendment right to present a defense includes the right of the defendant to offer the testimony of witnesses, to compel their attendance, and to present the defendant's version of the facts. *Washington v. Texas*, 388 U.S. 14, 19 (1967). Defendant contends that the Sixth Amendment gave him the right to present Tom as a witness so that defendant could challenge the truth and circumstances of his statement and present defendant's version of the facts. Defendant recognizes, however, that 13 V.S.A. § 2907 prevented Tom from taking an oath and precluded him from testifying in court. But defendant contends that "the statute . . . did not . . . create this dilemma, its implementation in this case has."

---

* Under 12 V.S.A. § 1608, a person is incompetent as a witness in any court if convicted of perjury. In the present case, Tom was not a witness in the court proceeding, but rather the court admitted his excited utterance through a competent witness. Thus, § 1608 does not bar the admission of Tom's excited utterance, and we held above that the Confrontation Clause does not prohibit the admission of the out-of-court statement.

¶ 16. Defendant relies on *Washington* to support his claim of error, but that case is inapposite. In *Washington*, the United States Supreme Court considered the validity of a state statute that allowed convicted coparticipants to testify for the prosecution, but prohibited them from testifying for the defense. 388 U.S. at 17. The Court concluded that the defendant's right to compulsory process had been violated because he had arbitrarily been denied the right to "put on the stand a witness who was physically and mentally capable of testifying." *Id.* at 23; see also *id.* at 25 ("This is ... a case in which the State has recognized as relevant and competent the testimony of this type of witness, but has arbitrarily barred its use by the defendant.") (Harlan, J., concurring). In contrast to *Washington*, the statute at issue in this case does not arbitrarily prevent defendant from calling the victim to testify — the victim cannot testify for either party. See *id.* at 24 (citing Vermont's perjury statute, and implying that such statutes, which disqualify convicted perjurers from appearing as witnesses "across-the-board," are not arbitrary because they are based on "general experience with a particular class of persons") (Harlan, J., concurring). Defendant maintains that his right to compulsory process was nonetheless violated because the State was able to elicit the victim's testimony through its hearsay witness. As previously discussed, however, the victim's hearsay testimony was properly admitted. Defendant's attempt to draw an analogy to *Washington* fails. Defendant does not argue that 13 V.S.A. § 2907 is unconstitutional, or raise any other claim under the Sixth Amendment; therefore, no plain error appears.

*Affirmed.*